**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

JOHN HALE                                                PLAINTIFF

V.                                        Civil No. 1:14-cv-61-LG-JCG

HARRISON COUNTY BOARD OF                           DEFENDANTS
SUPERVISORS et al.

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the Motion for Summary Judgment (ECF No. 174),
filed by Defendants Dr. Todd Coulter, Dr. Jeffrey Knight, Jaclyn Simmons Meyer,
and Tara Kutscherenko; the Motion for Summary Judgment (ECF No. 176), filed by
Defendants Yvernee Washington, Sheriff Melvin T. Brisolara, Angela French,
Angela Johnson, Elaine Lege, David Sanderson, Eric Tarpley, and Chitra Williams,
in their individual and official capacities; and the Motion for Summary Judgment
(178), filed by the Harrison County Board of Supervisors. Plaintiff John Hale, who
filed this suit while a pretrial detainee at the Harrison County Adult Detention
Center (HCDC), has responded to Defendants' Motions. (ECF Nos. 167, 183), and
Defendants have filed Replies (ECF Nos. 186, 187, 188). Having considered the
submissions of the parties, the record, and applicable law, the undersigned
concludes that Defendants' Motions for Summary Judgment should be granted.

## BACKGROUND

On February 21, 2014, Hale, a pretrial detainee, commenced this action *pro se*
and *in forma pauperis* against numerous Defendants, challenging the conditions of

his confinement while a pretrial detainee at HCDC during the period of July 26, 2013, to November 4, 2014. Plaintiff alleges that Defendants discriminated against him on the basis of disability, denied him adequate medical care, and retaliated and conspired against him for accessing the courts.

Hale was booked at HCDC on July 26, 2013, and transferred on November 4, 2014, to East Mississippi Correctional Facility to serve a sixteen-year sentence on various state-law crimes involving the sale and distribution of synthetic narcotics. (ECF Nos. 174-3, 27-28; 174-4, at 76, 113; 174-13; 175, at 5). Hale was sentenced as a habitual offender. (ECF No. 174-4, at 80).

Upon his arrival at HCDC in July 2013, Hale was medically screened and completed a medical questionnaire indicating that he suffered from back pain, hepatitis C, liver disease, and mental health issues. (ECF No. 150, at 226-29). Hale was under the influence of "opiates, morphine, oxycodone, and Xanax" when he entered HCDC on July 26, 2013, (ECF No. 174-4, at 30) and Dr. Coulter, a provider of health services at HCDC, ordered that Hale be observed while he was going through drug withdrawals. (ECF No. 150 at 223-24, 228).

Hale has been incarcerated at HCDC on previous occasions. Medical records from the Department of Veteran's Affairs (V.A.) indicate that Hale "has a history of disruptive behavior" and was "repeatedly delivered to police for incarceration after completing psy[chiatric] treatment at this V.A." *Id.* at 254. Defendants have submitted 275 pages of medical records documenting Hale's medical treatment at

HCDC from July 16, 2012, to June 4, 2014, as well as medical records documenting Hale's treatment at the V.A. *Id.* at 1-275.

Hale has advanced a variety of complaints about his medical care at HCDC. He contends that his medication Elavil should not have been crushed because it could damage his liver because he has hepatitis C. He alleges that Dr. Coulter should have prescribed him a high protein diet tray to manage his hepatitis C. He maintains that he should have been allowed to take Tums at multiple times during the day, as opposed to at one time, due to gastrointestinal issues. Hale contends that his teeth should not have been extracted at HCDC, but instead they should have been restored.

While at HCDC and the V.A., Hale has been treated with the prescription pain medicine Ultram or Tramadol, a schedule IV controlled substance. In this suit, Hale's primary medical complaint concerns the discontinuation of Ultram by Dr. Coulter. Hale claims that Dr. Coulter, Captain Lege, and former Warden Sanderson conspired to have this medication discontinued because they learned that Hale was continuing with this lawsuit, but Hale also claims that Dr. Coulter "stopped it because I was pushing the issue on a high protein diet because Hep C, you really need a high protein diet to protect your liver." (ECF No. 174-4, at 16).

In addition to medical claims, Hale alleges that Washington, the law library officer at HCDC, denied him access to the courts and caused him to lose an appeal to the Fifth Circuit Court of Appeals. Hale sues Sheriff Brisolara and the Harrison

County Board of Supervisors, blaming them for a leak in the roof at HCDC that caused Hale to slip and injure his knee.

Hale has filed at least eight other § 1983 lawsuits in the Southern District of Mississippi since 2004, several with allegations that are similar to the ones made here and several concerning HCDC.

In *Hale v. Harrison Co. Bd. of Supervisors,* No. 1:03-cv-840-LG-JMR (S.D. Miss. Oct. 21, 2003), Hale alleged that medical staff at HCDC did not adequately treat his pain or psychiatric conditions. Hale objected to being given Ibuprofen for pain, alleging that nonsteroidal anti-inflammatory drugs could damage his liver, an allegation he also makes in this suit. Complaint [1] in 1:03-cv-840-LG-JMR. The Court held that "Plaintiff's dissatisfaction with the type of medications administered does not rise to the level of a constitutional violation under 42 U.S.C. § 1983. Order [150] at 4 in 1:03-cv-840-LG-JMR. The Court found no merit to Hale's access to courts claim, finding that Hale did not demonstrate that his litigation efforts had been adversely affected nor shown that HCDC's policy regarding access to legal materials was not reasonably related to a legitimate penological interest. *Id.* A separate claim for excessive force was settled. Agreed Judgment [257] in 1:03-cv-840-LG-JMR.

In *Hale v. Harrison Co. Bd. of Supervisors,* No. 1:07-cv-956-LG-RHW (S.D. Miss. July 20, 2007), Hale sued the Harrison County Board of Supervisors and HCDC staff alleging that staff hindered his access to the courts. This suit was dismissed as

part of the settlement in 1:03-cv-840-LG-JMR.

In *Hale v. Harrison Co. Bd. of Supervisors,* No. 1:08-cv-1385-LG-RHW (S.D. Miss. Nov. 6, 2008), Hale alleged excessive force by a member of HCDC's staff. He further alleged that HCDC staff hindered his access to the courts and retaliated against him for accessing the courts. Hale voluntarily dismissed his access to courts claims, and the excessive force claims were dismissed for Hale's failure to prosecute.

In *Hale v. King,* No. 2:06-cv-245-MTP (S.D. Miss. Oct. 24, 2006), Hale asserted claims of inadequate medical treatment, denial of a proper diet, and violation of Title II of the Americans with Disabilities Act (ADA) against jail staff at the South Mississippi Correctional Institution. Like in this suit, Hale demanded to be prescribed Ultram and a high protein diet tray. The Court dismissed each claim.[1]

In *Hale v. Lege,* 1:12-cv-130-JMR (S.D. Miss. Apr. 25, 2012), Hale sued the Harrison County Board of Supervisors and HCDC staff, including Dr. Coulter. Hale alleged that Defendants violated the ADA and the Fourteenth Amendment by providing him inadequate medical treatment. He demanded pain medication and a high protein diet tray. Hale dismissed this suit without prejudice.

---

[1] Hale appealed the Court's ruling. The Fifth Circuit vacated the portion of the Court's decision addressing whether Title II of the ADA validly abrogates state sovereign immunity for Hale's claim. The Fifth Circuit remanded the case for the purpose of allowing Plaintiff to amend his Title II allegations. *Hale v. King,* 642 F.3d 492 (5th Cir. 2011). On remand, the Court found that Hale had failed to allege facts sufficient to allow the court to reasonably infer that he was disabled within the meaning of Title II of the ADA. *Hale v. State of Miss.,* 2013 WL 152857, at *5 (S.D. Miss. Jan. 15, 2013).

*Hale v. Abangan,* 3:15-cv-170-CWR-FKB (Mar. 9, 2015), was filed after commencement of this action by Hale against a physician, kitchen supervisors, and other staff at East Mississippi Correctional Facility, for their alleged failure to provide him with adequate treatment for chronic pain and a high protein diet tray. The Complaint remains pending.

*Hale v. Smith,* 3:16-cv-105-DPJ-FKB (Feb. 11, 2016) was filed by Hale after he commenced this action against a physician and nurse practitioner at East Mississippi Correctional Facility, alleging inadequate treatment for chronic pain.

Hale has two "strikes" under the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321, H.R. 3019 (codified as amended in scattered titles and sections of the U.S.C.), meaning that he has twice "while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on grounds that it [was] frivolous, malicious, or fail[ed] to state a claim." 28 U.S.C. § 1915(g). Hale received his first strike in *Hale v. State of Mississippi,* No. 2:06-cv-245-MTP (Order [88], at 8). Hale received a second strike when he filed a frivolous appeal of an interlocutory order in this case. (ECF No. 169). If Hale accumulates three strikes, he is barred from proceeding *in forma pauperis* in any civil action or appeal while he is incarcerated or detained in any facility unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

## DISCUSSION

**<u>Summary Judgment Standard</u>**

Federal Rules of Civil Procedure 56 provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. The movant need not, however, support the motion with materials to negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving partys' claim. *Id.* at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Summary judgment can be granted only if the record demonstrates that no genuine issue of material fact exists. It is improper for the court to "resolve factual disputes by weighing the conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper if the court merely believes it unlikely that the non-moving party will prevail at trial. *Nat. Scrren Serv. Corp. v. Poster Exch., Inc.,* 305 F.2d 647, 651 (5th Cir. 1962).

## Preliminary Matters

In his Complaint and Amended Complaint, Hale seeks monetary and injunctive relief. Hale's claims for injunctive relief are moot because he has been transferred from HCDC to East Mississippi Correctional Facility. The undersigned has not considered Hale's claims that were raised for the first time in response to Defendants' motions for summary judgment, as those claims are not properly before the Court. *Fisher v. Metropolitan Life Ins. Co.,* 895 F.2d 1073, 1078 (5th Cir. 1990).

## ADA Claim

Hale claims that the crushing of medication administered to him violated the ADA. He submits that an accommodation should have been made to him because he has hepatitis C, and crushing his medication could harm his liver. (ECF No. 174-4, at 13-14). Hale admits that the practice of crushing medications is a legitimate precautionary measure to deter the hoarding and abuse of medication, including attempted suicide. *Id.* at 14. Hale's treatment records indicate that he has

attempted suicide by overdose. (ECF No. 150, at 115-16, 251, 266).

Title I of the ADA applies to employment. Title II applies to State and local government entities. Establishing a prima facie case of disability-discrimination under Title II of the ADA requires the plaintiff to prove (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity, and (3) that such discrimination is by reason of his disability. *Hale v. King,* 642 F.3d 492, 499 (5th Cir. 2011).

Hale does not have a viable claim under the ADA because he is ultimately complaining regarding the adequacy of medical treatment. *See Walls v. Texas Dept. of Criminal Justice,* 270 F. App'x 358, 359 (5th Cir. 2008). Hale's claims are not properly brought under the ADA because the "[t]he ADA does not set out a standard of care for medical treatment." *Id.* (citing *Buchanan v. Maine,* 469 F.3d 158, 174 (1st Cir. 2006) and *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996)).

Assuming Hale's claims could proceed under the ADA, Hale cannot succeed on them because he has not established that he has a mental or physical impairment that substantially limits a major life activity, a record of such impairment, or has been regarded as having such an impairment. *Hale,* 642 F.3d at 500 (citing 42 U.S.C. §12102). While Hale may have hepatitis C, chronic pain, gastrointestinal issues, and psychological disorder, "[m]erely having an impairment . . . does not make one disabled for purposes of the ADA." *Id.* at 501 (citation

omitted). Hale's treatment records and testimony do not contain facts regarding the impact of Hale's ailments on his ability to perform major life activities. Hale has failed to state a claim for relief under Title II of the ADA.

**Medical Care Claims**

In addition to his claims regarding the crushing of his medication, Hale alleges that Dr. Coulter's refusal to prescribe him a high protein diet tray to manage his hepatitis C violated his constitutional right to adequate medical treatment. *Id.* at 4. Hale maintains that HCDC medical staff, including Dr. Coulter, should have allowed him to take Tums at multiple times during the day, as opposed to one time a day, due to Hale's intestinal issues. (ECF No. 54-1, at 1; ECF No. 174-4, at 31, 33, 56). Hale's primary medical complaint is that Dr. Coulter discontinued his prescription for Ultram. Hale sues Dr. Knight because according to Hale, Dr. Knight had a policy "that allows for pulling only of teeth [which has] cost Plaintiff most of his teeth that could have been fixed." (ECF No. 54-1, at 4). Hale insists that Dr. Knight told him that his teeth "were worth saving," but restorative care was "not allowed here at the jail." *Id.*

Detention and correctional facilities have an obligation to provide adequate medical care to detainees and prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). "The constitutional rights of a pretrial detainee flow from the procedural and substantive due process guarantees of the Fourteenth Amendment . . . ." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999) (citing *Bell v.*

*Wolfish,* 441 U.S. 520, 535 (1979)). "When the alleged unconstitutional conduct involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights, regardless of whether the individual is a pretrial detainee or state inmate." *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001) (citing *Farmer,* 511 U.S. at 825). The standard is whether the state actor "knew of and disregarded an excessive risk" to an inmate's "serious medical needs." *Domino v. Tex. Dept. of Criminal Justice,* 239 F.3d 752, 755 (5th Cir. 2001) (citing *Farmer,* 511 U.S. at 837).

> To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir. 1999). Deliberate indifference is more than mere negligence in failing to supply medical treatment. *See id.*; *Williams v. Treen,* 671 F.2d 892, 901 (5th Cir. 1982). Disagreement with medical treatment alone cannot support a claim under § 1983. *See Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997).

*Gibbs,* 254 F.3d at 549.

"Deliberate indifference is an extremely high standard to meet." *Domino,* 239 F.3d at 756. An incorrect diagnosis is insufficient to state a claim. *Id.* Plaintiff must show that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985). The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference.

*Farmer,* 511 U.S. at 838.

The record reflects the critical fact that Hale's medical needs were not being ignored while he was in the care of HCDC. *See Domino,* 239 F.3d at 756; *Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir. 1995) ("[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). While Dr. Coulter discontinued certain medications, including Ultram, on March 20, 2014, Hale admits that Dr. Coulter only stopped certain medications. Hale was prescribed at least nine other medications while at HCDC, though he refused some offered to him. (ECF No. 174-4, at 19-22, 119-20). After Dr. Coulter stopped prescribing Ultram to Hale, Dr. Coulter made subsequent efforts to address Hale's pain. On April 25, 2014, Dr. Coulter offered to treat Plaintiff's pain with the non-opioid medication Gabapentin. HCDC treatment records provide:

> Mr. Hale requested Dr. Coulter to continue Tramadol. Dr. Coulter stated that Tramadol is a scheduled drug and he is exercising his right not to use his DEA. Dr. Coulter offered Ibuprofen. Mr. Hale stated he did not want the Ibuprofen because it upset his stomach. Dr. Coulter also suggested that Gabapentin would be appropriate for his pain. He stated "Do whatever you want, you are the doctor." Dr. Coulter asked again if he would like to try Gabapentin. Mr. Hale was nonverbal at that time. Dr. Coulter stated "Thank you Mr. Hale." Mr. Hale got up and stated "They will be serving you with papers" as he exited the clinic.

(ECF No. 150, at 90).

Hale was offered Ibuprofen, Tylenol, and Gabapentin for pain but he

disagrees with treatment by these medications because he contends that they will damage his liver and upset his stomach. However, Hale acknowledges that staff at HCDC drew his blood to monitor his liver functioning and that the results were within range. (ECF No. 174-5, at 116-17). If Hale requested a certain type of medication or diet and was refused, it is not within the Court's province to question a decision made by a medical provider. The decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle v. Gamble,* 429 U.S. 97, 107 (1976); *see Williams v. Chief of Med. Operations, Tarrant Co. Jail,* 44 F.3d 1004, *2 (5th Cir. 1994) ("Neither the fact that Williams continued to experience pain despite the treatment afforded him nor the fact that doctors refused to provide him with the specific pain killers he requested is sufficient to constitute a violation of his Fourteenth Amendment rights."); *Clark v. Perego,* 39 F.3d 320, *2 (5th Cir. 1994) (failure to provide vegetarian tray found not to be deliberately indifferent); *Gamage v. Wexford Health Sources, Inc.,* No. 3:10-cv-666-MTP, 2013 WL 704933, at *5 (S.D. Miss. Feb. 26, 2013) ("Plaintiff is not entitled to receive medications simply because he requested them."). Whether Hale's medications should have been administered crushed or in whole form, and whether he should have been allowed Tums throughout the day or at one time, are also differences in medical opinion between HCDC's staff and the inmate regarding a course of treatment and do not state a constitutional claim. *Hall v. Secretary,* No. 2:07-cv-313-FtM-36DNF, 2010 WL 2681728, *8 (M.D. Fla. July 7, 2010).

Hale complains regarding teeth extractions, yet he signed an informed consent form to receive dental treatment, and on at least two occasions requested to have extractions. (ECF No. 150, at 152, 168, 233). In *McQueen v. Karr,* the Fifth Circuit affirmed the dismissal of a dental claim like Hale's as frivolous and for failure to state a claim, where the prisoner argued that he was entitled to restorative dental care instead of tooth extractions. 54 F. App'x 406, *1 (5th Cir. 2002). Other courts have found likewise. *See Ball v. Johnson Co. Jail,* No. 3:03-cv-3056, 2004 WL 2338105, *2 (N.D. Tex. Oct. 18, 2004) (dental extractions at jail found constitutionally adequate medical care), *report and recommendation adopted,* 2005 WL 1204580 (N.D. Tex. May 17, 2005); *Del Muro v. Fed. Bureau of Prisons,* No. 5:03-cv-214-B, 2004 WL 1542216, *4 (N.D. Tex. July 8, 2004) (prisoner's inadequate dental care claim dismissed as frivolous where prisoner demanded restorative procedures instead of extraction).

It is evident from Hale's treatment records that his various medical conditions were treated or monitored by Dr. Coulter as well as other HCDC medical staff. Accepting Hale's allegations as true, his claims of inadequate medical care and deliberate indifference amount at most to a disagreement between patient and medical professional as to appropriate treatment, which is not actionable under § 1983. Accordingly, Hale's claims for inadequate medical treatment and deliberate indifference lack an arguable basis in law or fact and should be dismissed with prejudice as frivolous and for failure to state a claim.

**Retaliation Claim Against Lege and Sanderson**

Hale alleges that Captain Lege and former Warden Sanderson conspired with Dr. Coulter to discontinue Plaintiff's prescriptions in retaliation for Hale filing this action. (ECF No. 174-4, at 92; ECF No. 176-8, at 9-10). According to Hale, Lege and Sanderson were reading his mail, and his medication stopped on the same day that he mailed a document to the Court advising that he was continuing with this suit. (ECF No. 174-4, at 93). Hale maintains that he saw these Defendants pointing and laughing at him through a window while he was in the medical area around the time his medication was discontinued. *Id.* Hale admits that he did not hear the alleged conversation. (ECF 176-8, at 8). Hale testified at the omnibus hearing

> The Court: Okay. And aside from you seeing them do that, what –
>
> Mr. Hale: I don't have proof on it. It's an inference or – it's just an allegation, I guess. That's why I made the allegation.

(ECF No. 174-4, at 50)

Prison officials may not retaliate against an inmate for exercising his First Amendment right of access to the courts. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). However, claims of retaliation from prison inmates are regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions. *Id.* at 1166. To prevail on a claim of retaliation, a prisoner must establish four elements: (1) the plaintiff engaged in constitutionally protected conduct, (2) the defendant's intent to retaliate against the prisoner for his or her

exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006).

Hale cannot meet the first element of a retaliation claim because he was not engaging in constitutionally protected conduct when he filed frivolous claims challenging his medical care. *Lee v. Richland Parish Detention Ctr.,* 483 F. App'x 904, 906 (5th Cir. 2012). An inmate has no constitutional right to file frivolous claims. *See Lewis v. Casey,* 518 U.S. 343, 352-53 n.3 (1996) ("Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."). Frivolous filings cannot "comprise the basis of a retaliation claim." *Johnson v. Rodriguez,* 110 F.3d 299, 312 (5th Cir. 1997).

Further, it is uncontroverted that Lege and Sanderson are correctional officers who did not have the authority to prescribe medication, nor the authority to discontinue a course of treatment. (ECF No. 176-8, at 9-10). The claims against Lege and Sanderson may be dismissed on this basis as well. *See Jones v. Vadlamudi,* No. 9:13-cv-25, 2015 WL 670474, *7 (N.D.N.Y. Feb. 17, 2015).

Finally, Hale has not offered direct evidence or a chronology of events from which retaliation may plausibly be inferred. *Jones v. Greninger,* 188 F.3d 322, 324-25 (5th Cir. 1999). In a prisoner suit alleging retaliation, the Fifth Circuit held that "temporal proximity alone is insufficient to prove but for causation." *Reese v. Skinner,* 322 F. App'x 381, 383 (5th Cir. 2009). Hale speculates but offers no

evidence that anyone was reading his mail or that Dr. Coulter knew that Hale had elected to move forward with this suit. The fact that Hale's medications were discontinued around the same time that an alleged conversation occurred that Hale did not hear does not create a genuine issue regarding causation or an intent to retaliate. "Plaintiff's subjective belief that he was the victim of retaliation does not give rise to a cause of action under 42 U.S.C. § 1983." *Phillips v. Mills,* No. 3:04-cv-991-P, 2004 WL 140-2569, *2 (N.D. Tex. June 22, 2004).

### Access to Courts Claim Against Washington

Hale alleges that Washington, the law library officer at HCDC, caused him to lose an appeal to the Fifth Circuit Court of Appeals by not providing him with paper, pen, and postage. (ECF No. 174-4, at 9). A timeline of events demonstrates that this claim is also frivolous.

Hale entered HCDC on July 26, 2013. (ECF 174-4, at 69). On January 22, 2013, months prior to entering HCDC, Plaintiff filed a notice of appeal of the dismissal of a separate lawsuit, *Hale v. State of Mississippi,* No. 2:06-cv-245-MTP. (ECF No. 176-9, at 21). As a result of his failure to comply with briefing deadlines, the Fifth Circuit dismissed the appeal on April 22, 2013. (ECF 176-8, at 16). Hale thereafter filed a motion to reinstate his appeal on May 24, 2013, to which the Fifth Circuit responded: "We will process the motion to reinstate only upon receipt of your brief. The Court normally will not reinstate a case dismissed by the clerk under 5th Cir. R. 27.1.6 unless the default is remedied within 45 days from the date of

dismissal. *Id.* at 18 (emphasis in original). Forty-five days from the date of the dismissal of Plaintiff's appeal was June 6, 2013, more than a month and a half before Hale entered HCDC on July 26, 2013. Because Hale's deadline expired before he was booked at HCDC, Hale's failure to timely file a brief with the Fifth Circuit cannot be attributed to Washington.

After Hale entered HCDC, he asked Washington to provide him with paper, pen, and postage to mail a brief to the Fifth Circuit. (ECF No. 174-4, at 9-10). She advised him to complete an indigent packet, as is the policy at HCDC, and Hale told her "that's not going to work" because he wanted the supplies immediately. *Id.* at 11-12. "Limitations may be placed on library access "so long as the regulations are reasonably related to legitimate penological interests." *McDonald v. Steward,* 132 F.3d 225, 230 (5th Cir. 1998). The burden is on the inmate to show that the regulation is not reasonably related to a legitimate penological interest, and Hale has not made this showing. *See Turner v. Safley,* 482 U.S. 78, 84-85 (1987). His claim against Washington fails for this reason as well.

Even if Washington could be found at fault, Hale has not established an actual injury. "A denial-of-access-to-the-courts claim is not valid if a litigant's position is not prejudiced by the alleged violation." *Henthorn v. Swinson,* 955 F.2d 351, 354 (5th Cir. 1992). Though prisoners enjoy the constitutional right of access to the courts, that right is not unlimited and "encompasses only a reasonable adequate opportunity to file nonfrivolous legal claims challenging their convictions or

conditions of confinement." *Jones,* 188 F.3d at 325. Hale has not demonstrated that he was pursuing a nonfrivolous appeal, and thus he has proven no actual injury. *Brewster v. Dretke,* 587 F.3d 764, 769 (5th Cir. 2009); *Carter v. Lowndes Co.,* 89 F. App'x 439, 442 (5th Cir. 2004) (citing *Lewis,* 518 U.S. at 349-51). The claims against Washington lack an arguable basis in law or fact and should be dismissed with prejudice as frivolous and for failure to state a claim.

## Claims Against Johnson, Wilson, Tarpley, and French

Hale maintains that correctional officer Johnson came to his cell to give him two Tums, and he placed the Tums on his rack. (ECF No. 174-4, at 56). Johnson told Hale that he had to take the Tums while she watched, and Hale protested that he was allowed to keep them until he needed them. *Id.* Johnson again told Hale to take the Tums, so Hale took one and "[o]ne fell out of my hand and fell in the toilet." *Id.* Johnson opened the cell door and flushed the toilet and told Hale that he would be written up. *Id.* In response, Hale stated, "Well, I can write paperwork too. I know how to do paperwork." *Id.* When Johnson returned to provide Hale with the Rule Violation Report (RVR), Hale stated, "I got something for you too." (ECF No. 176-13).

On August 4, 2014, Hale was given a RVR for failing to obey Johnson's orders, which is considered a minor RVR. (ECF No. 176-8, at 19). On August 5, 2014, correctional officer Wilson wrote a second RVR against Hale for threatening Johnson, which is considered a major RVR. *Id.* at 20. The major RVR was dismissed

without a hearing. *Id.* A hearing was held on the minor RVR, with Sergeant Tarpley and Sergeant French as hearing officers. Hale was found guilty of the minor RVR and lost two weeks of canteen privileges. *Id.* at 19.

Hale is suing Tarpley because Tarpley would not allow him to call witnesses at the hearing on the minor RVR and French because Tarpley and French "just ride with each other. They cover for each other. She's part of it." *Id.* at 12-13. Given that the hearing was for a minor offense, the process that Hale was due consisted of notice and an opportunity to present a statement. *Hewitt v. Helms,* 459 U.S. 460, 476 (1983); *Cooper v. Sheriff, Lubbock Co.,* 929 F.2d 1078, 1083 (5th Cir. 1991); *Dzana v. Foti,* 829 F.2d 558, 561 (5th Cir. 1987). Nowhere in his filings has Hale claimed that he was denied notice or an opportunity to make a statement. Hale was not denied due process in connection with the disciplinary proceeding, and two weeks of commissary restrictions do not implicate due process concerns. *Madison v. Parker,* 104 F.3d 765, 767-68 (5th Cir. 1997). Hale's claims against Johnson, Wilson, Tarpley, and French lack an arguable basis in law or fact and should be dismissed with prejudice as frivolous and for failure to state a claim.

## Negligence Claim Against Sheriff Brisolara and the Harrison County Board of Supervisors

Hale advances what he characterizes as a "pendent state law claim" against Sheriff Brisolara and the Harrison County Board of Supervisors for failing to keep the roof at HCDC in good repair, causing Hale to slip and injure his knee. (ECF No. 174-4, at 49). Hale's claims are barred by the provisions of the Mississippi Tort

Claims Act (MTCA), Miss. Code Ann. § 11-46-1, *et seq.*

The MTCA provides that "[a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . of any claimant who at the time the claim arises is an inmate of any detention center, jail, penitentiary or other such institution . . . ." Miss. Code Ann. §11-46-9(1)(m). Hale's claim fails for this reason. The claim also fails because Hale did not file a notice of claim under the MTCA as required by Miss. Code Ann. § 11-46-11(1). Further, the Harrison County Board of Supervisors is not a legal entity or political subdivision subject to suit, but rather a department of Harrison County, Mississippi. *Hearn v. Hinds Co. Bd. of Supervisors,* No. 3:11-cv-662-DPJ-FKB, 2012 WL 3913423, *4 (S.D. Miss. Sept. 7, 2012). Any amendment to add Harrison County at this juncture would be futile.

## Abuse of the Litigation Process

Hale is an abusive litigant who readily admits that he utilizes the litigation process as a means to intimidate jail staff into providing him what he wants, particularly medication. (ECF No. 150, at 95, 98, 102, 108, 112, 124, 212). Hale's current suit, which contains numerous frivolous claims, counts as Hale's third strike for purposes of the PLRA. 28 U.S.C. § 1915(g). Hale should be barred from proceeding *in forma pauperis* in any civil action or appeal while he is incarcerated or detained in any facility unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g)

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

It is recommended that the summary judgment motions of all Defendants (ECF No. 174, 176, and 178) be granted and Hale's suit dismissed as frivolous and for failure to state a claim.

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U.Civ.R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Automobile Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 31st day of January, 2017.

_s/ John C. Gargiulo_
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE